CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Chris Carson, Esq., SBN 280048
Dennis Price, Esq., SBN 279082
<u>Mail</u>: PO Box 262490
San Diego, CA 92196-2490
<u>Delivery</u>: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Shirley Lindsay**, <br><br> Plaintiff, <br><br> v. <br><br> **Carolyn K. Mulne**, in individual and representative capacity as trustee; **Jeff Muchamel**; and Does 1-10, <br><br> Defendants. | **Case No**. <br><br> **Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Shirley Lindsay complains of Carolyn K. Mulne, in individual and representative capacity as trustee; Jeff Muchamel; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. She suffers from spinal muscular atrophy. Plaintiff drives a van that has a handicap placard issued by the state of California. She uses both a walker and wheelchair for mobility.

1

Complaint

2. Defendant Carolyn K. Mulne, in individual and representative capacity as trustee, owned the real property located at or about 11653 Moorpak Street, North Hollywood, California, in January 2019.

3. Defendant Carolyn K. Mulne, in individual and representative capacity as trustee, owns the real property located at or about 11653 Moorpak Street, North Hollywood, California, currently.

4. Defendant Jeff Muchamel owned Village Market located at or about 11653 Moorpak Street, North Hollywood, California, in January 2019.

5. Defendant Jeff Muchamel owns Village Market ("Market") located at or about 11653 Moorpak Street, North Hollywood, California, currently.

6. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights

Act, which act expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. Plaintiff went to the Market in January 2019 with the intention to avail herself of its goods and services, motivated in part to determine if the defendants comply with the disability access laws.

11. The Market is a facility open to the public, a place of public accommodation, and a business establishment.

12. Paths of travel are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Market.

13. Some wheelchair users, including plaintiff, travel onto the site from the exterior public sidewalks. Here, there was no safe wheelchair accessible route of travel from the northern sidewalk on Moorpark Street to the accessible entrance of the Market. The public sidewalks terminate after entering the boundary of the property and there is no safe path of travel after that point.

14. There was a ramp leading from the sidewalk to the front entrance of the Market, which was longer than six feet in length. The ramp had slopes of about 9.4%. There were no handrails. This is inaccessible to wheelchair users.

15. Parking spaces are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Market.

16. Unfortunately, even though there was a parking space marked and reserved for persons with disabilities in the parking lot serving the Market during Plaintiff's visit, the parking stall and access aisle were not level with each other. The parking stall and access aisle had inaccessible slopes that exceeded 2.1%.

Complaint

17. Additionally, the flared sides of the ramp that is located in the access aisle has cross slopes that are about 17%. This is too steep.

18. Finally, the parking stall ostensibly designed for persons with disabilities did not have the required signage bearing the ISA logo, there was no "Minimum Fine $250" signage and there was no tow-away signage.

19. Currently, the parking stall and access aisle are not level with each other.

20. Currently, the parking stall ostensibly designed for persons with disabilities does not have the required signage bearing the ISA logo, there is no "Minimum Fine $250" and there is no tow-away signage.

21. Plaintiff personally encountered these barriers.

22. This inaccessible facility denied the plaintiff full and equal access and caused her difficulty.

23. Meanwhile, even though the plaintiff did not personally confront the barriers, the walkway in front of the Market has cross slopes on the walkways that are above 2.1%.

24. Although there are shelves and merchandise aisles open to customers for shopping, the paths of travel in and throughout these merchandise aisles are not accessible because the defendants have a practice of placing merchandise boxes and displays in the route of travel, which restricts passage to less than 36 inches in width.

25. In fact, some of the aisles narrows to as little as 32 inches in width.

26. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

27. Plaintiff will return to the Market to avail herself of its goods or services once the barriers are permanently removed. If the barriers are not removed, the plaintiff will face unlawful and discriminatory barriers again.

28. The defendants have failed to maintain in working and useable

conditions those features required to provide ready access to persons with disabilities.

29. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove.

30. For example, there are numerous paint/stripe companies that will come and stripe a level parking stall and access aisle and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in full compliance with federal and state access standards.

31. Given the obvious and blatant nature of the barriers and violations alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to her disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once she conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to her disability remedied. See *Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, she can sue to have all barriers that relate to her disability removed regardless of whether she personally encountered them).

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

32. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

33. Under the ADA, it is an act of discrimination to fail to ensure that the

Complaint

privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

34. Under the ADA, there must be an accessible route of travel from the boundary of the site, i.e., from the public street and public sidewalks at the "site arrival points" to the building entrances on the site. 2010 Standards (ADAAS) § 206.2.1.

35. Here, the failure to provide an accessible route is a violation of the law.

36. If a ramp run has a rise greater than 6 inches or a horizontal projection

greater than 6 feet, then it must have handrails on both sides. 2010 Standards § 405.8.

37. Here, the failure to provide handrails on the ramp leading to the front entrance is a violation of the ADA.

38. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards 502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. No more than a 1:48 slope is permitted. 2010 Standards § 502.4.

39. Here, the failure to provide level parking stall is a violation of the law.

40. The sides of curb ramp flares shall not be steeper than 10%. 2010 Standards § 406.3.

41. Here, the sides of the curb ramp flares exceed that allowed by law.

42. Any business that provides parking spaces must provide accessible parking spaces. 2010 Standards § 208. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and length of the parking space are to be addressed by State or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each parking space must be at least 216 inches in length. CBC § 11B-502.2 Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (♿) in white on a blue background. Id. It cannot be smaller than 70 square inches and must be mounted so that there is a minimum of 80 inches from the

Complaint

bottom of the sign to the parking space. Id. Signs must be posted so that they cannot be obscured by a vehicle parking in the space. Id. An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. Id. Another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. Id. Additionally, the surface of the handicap parking stall must have a profile view of a wheelchair occupant (♿) that is 36 inches by 36 inches. Id. And the surface of the access aisle must have a blue border. CBC § 1129B.3. The words "NO PARKING" in letters at least a foot high must be painted on the access aisle. Id.

43. Here, there was no pole or wall mounted signage with the wheelchair logo, no "Minimum Fine $250" and no tow-away signs, in violation of the ADA.

44. Nowhere shall the cross slope of an accessible route exceed 2.1%. 2010 Standards § 403.3.

45. Here, the slopes along the walkways exceeded the levels allowed by law.

46. The minimum clear width of an accessible route shall be 36 inches. 2010 Standards § 403.5.1.

47. Here, the failure to provide accessible paths of travel inside the Market is a violation of the ADA.

48. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

49. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

Complaint

50. Given its location and options, plaintiff will continue to desire to patronize the Market but she has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

51. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint. The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code §51(b).

52. The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f).

53. Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of, Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

54. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

Complaint

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 per occasion.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: February 11, 2019          CENTER FOR DISABILITY ACCESS

By: _____
Chris Carson, Esq.
Attorney for plaintiff

Complaint