CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Chris Carson, Esq., SBN 280048
Elliott Montgomery, Esq., SBN 279451
8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
ElliottM@potterhandy.com
Attorneys for Plaintiff

1
2
3
4
5
6
7

8     UNITED STATES DISTRICT COURT

9     CENTRAL DISTRICT OF CALIFORNIA

10

11
12    **Shirley Lindsay,**
13          Plaintiff,
14    v.
15    **Carolyn K. Mulne,** in individual and representative capacity as trustee;
16    **Jeff Muchamel**; and Does 1-10,
17          Defendants.
18
19

**Case No.** 2:19-cv-01166-VAP-GJS

**Plaintiff's Opposition to Defendant Jeff Muchamel's Motion to Dismiss**

Date:        November 18, 2019
Time:        2:00 p.m.
Courtroom:   8A

**Hon. Virginia A. Phillips**

20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................4

   I.   Preliminary Statement .........................................................4

   II.   Defendant Jeff Muchamel's Jurisdictional Challenge Is
       Inappropriate as a 12(b)(1) Motion. ................................4

   III. Lindsay Is a Profoundly Disabled Person and an Active ADA
       Litigator Who Personally Encountered Blatant Paths of
       Travel and Parking Space Violations at the Village Market
       and Who Has Declared That She Intends to Return to the
       Village Market But Is Deterred From Returning Until the
       Village Market is Fully Compliant. There Can Be No Doubt
       that Lindsay Has Met the Broad and Liberal Test for
       Standing in ADA Cases. ..................................................6

   A.  Lindsay Suffered an Injury in Fact Because She Personally
       Encountered Inaccessible Paths of Travel and Parking
       Space at the Village Market in January 2019. .............7

   B.  Lindsay has standing to obtain injunctive relief because she is
       deterred from returning to the Village Market until the
       unlawful barriers are removed. ......................................9

   C.  Lindsay does not need to allege intent to return to the Market
       as a customer in order to have Standing. ....................11

   D.  Lindsay was not asked and did not deny that she had an intent
       to return to the Market, and has stated in signed
       Interrogatory responses that she does intend to return. ...........12

Opposition to Motion to Dismiss                  2:19-cv-01166-VAP-GJS

1    IV.  There Is No Basis for the Court to Decline to Retain

2           Supplemental Jurisdiction Over the Unruh Claim ..................... 14

3    V.   Conclusion ...................................................................... 16

4

5

6

7                              **TABLE OF AUTHORITIES**

8    **Cases**

9    *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 787 (3d Cir. 1995) ..... 16

10   *Careau Grp. v. United Farm Workers of Am., AFL-CIO,*

11          940 F.2d 1291 (9th Cir. 1991) ................................................6

12   *Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093

13          (9th Cir. 2017) .................................................................. 11

14   *Daenzer v. Wayland Ford, Inc.*, 193 F. Supp. 2d 1030, 1043 (W.D.

15          Mich. 2002) ...................................................................... 15

16   *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008) ...................... 7, 10

17   *Kohler v. CJP, Ltd.,*

18          818 F. Supp. 2d 1169 (C.D. Cal. 2011) ....................................4

19   *LaFleur v. S&A Family LLC*, 2014 WL 2212018 (C.D. Cal. 2014) ....... 16

20   *Langer v. McHale,* 2014 WL 5422973 (S.D. Cal. 2014) ......................... 16

21   *Martinez v. Longs Drug Stores, Inc.*, 2005 WL 2072013 (E.D. Cal.

22          2005) ............................................................................... 16

23   *Munson v. Del Taco, Inc.,* 2006 WL 4704611 (C.D. Cal. 2006) ............. 16

24   *Natl. Fedn. of the Blind of California v. Uber Techs., Inc.*, 103 F. Supp.

25          3d 1073 (N.D. Cal. 2015) ....................................................7

26   *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133 (9th Cir. 2002) ... 11

27   *Rosado v. Wyman*, 397 U.S. 397, 405 (1970 ........................................... 15

28

Opposition to Motion to Dismiss                    2:19-cv-01166-VAP-GJS

*Rosales v. United States*,

    824 F.2d 799 (9th Cir. 1987) .................................................................6

*Safe Air for Everyone v. Meyer*,

    373 F.3d 1035 (9th Cir. 2004) ...........................................................5

*Schneider v. TRW, Inc.*, 938 F.2d 986, 993 (9th Cir. 1991) ..................... 15

*Sun Valley Gasoline, Inc. v. Ernst Enter., Inc.*,

    711 F.2d 138 (9th Cir. 1983) ....................................................... 4, 5, 6

*Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205 (1972) .............................6

*Wilson v. Pier 1 Imports (US), Inc.*, 413 F. Supp. 2d 1130 (E.D. Cal.

    2006) .........................................................................................................7

**Statutes**

42 U.S.C. § 12182(a) .......................................................................................9

42 U.S.C. § 12182(b)(2)(A)(iv) .......................................................................9

Opposition to Motion to Dismiss                     2:19-cv-01166-VAP-GJS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Preliminary Statement

Plaintiff, who suffers from a spinal muscular atrophy, filed the instant claims against the defendants because the business failed to provide an accessible sales counter.  Defendant Jeff Muchamel moves for dismissal of the Complaint on the basis that the Court lacks subject matter jurisdiction. This argument does not have merit. The Complaint contains sufficient factual allegations, and Lindsay's pleading is sound.

### II.   Defendant Jeff Muchamel's Jurisdictional Challenge Is Inappropriate as a 12(b)(1) Motion.

"There is an important difference between Rule 12(b)(1) motions attacking the complaint on its face and those that rely on extrinsic evidence. In ruling on the former, courts must accept the allegations of the complaint as true."[1] Here, Jeff Muchamel has moved for dismissal on the basis that the court lacks subject matter jurisdiction. Dismissal for lack of subject matter jurisdiction in a case premised on federal-question jurisdiction is "exceptional."[2]

While it is appropriate in certain circumstances to bring a motion under Federal Rule of Civil Procedure 12(b)(1) introducing extrinsic facts and challenging federal court jurisdiction, it is not appropriate in the present case with the present motion.

The problem with the defendant's motion is that the very question this Court needs to address in determining whether it has jurisdiction is the

---

[1] *Kohler v. CJP, Ltd.*, 818 F. Supp. 2d 1169, 1172 (C.D. Cal. 2011).

[2] *Sun Valley Gasoline, Inc. v. Ernst Enter., Inc.*, 711 F.2d 138, 140 (9th Cir. 1983).

Opposition to Motion to Dismiss                                    2:19-cv-01166-VAP-GJS

1   same question that must be answered to determine the merits of the case
2   and whether Plaintiff can prove his claims. Plaintiff alleges that the Market
3   does not comply with state and federal accessibility laws. If that is true,
4   Plaintiff wins and can obtain an injunction. If that is wrong, then Plaintiff
5   loses. That is the case. The ultimate question in this case is whether the
6   Store complies with accessibility laws.  Jeff Muchamel, however, asks this
7   Court to answer that very question in determining whether it has
8   jurisdiction.  This is improper.

9       The Ninth Circuit has cautioned that courts should not apply
10  Federal Rule of Civil Procedure 12(b)(1) or 12(h)(3) when, as it is here, the
11  issue of jurisdiction is intertwined with the merits of a claim.[3] Where the
12  jurisdictional facts are intertwined with the merits, a Rule 56 "summary

13
14
15
_____

16  [3] *See Sun Valley Gasoline*, 711 F.2d at 139-40; *Safe Air for Everyone v. Meyer*, 373
17      F.3d 1035, 1039 (9th Cir. 2004); *Robert v. Corrothers*, 812 F.2d 1173, 1177
        (9th Cir. 1987) ("The relatively expansive standards of a 12(b)(1) motion are
18      not appropriate for determining jurisdiction in a case . . . where issues of
19      jurisdiction and substance are intertwined. A court may not resolve genuinely
        disputed facts where 'the question of jurisdiction is dependent on the
20      resolution of factual issues going to the merits.'") (citation omitted); *Rosales v.*
21      *United States*, 824 F.2d 799, 803 (9th Cir. 1987) ("[I]f the jurisdictional issue
22      and substantive claims are so intertwined that resolution of the jurisdictional
        question is dependent on factual issues going to the merits, the district court
23      should employ the standard applicable to a motion for summary judgment
24      and grant the motion to dismiss for lack of jurisdiction only if the material
        jurisdictional facts are not in dispute and the moving party is entitled to
25      prevail as a matter of law . . . . Otherwise, the intertwined jurisdictional facts
26      must be resolved at trial by the trier of fact."); *Rosales v. United States*, 824 F.2d
27      799, 803 (9th Cir. 1987) ("A district court may hear evidence and make
28      findings of fact necessary to rule on the subject matter jurisdiction question
        prior to trial, *if the jurisdictional facts are not intertwined with the merits*.").

Opposition to Motion to Dismiss                    2:19-cv-01166-VAP-GJS

1   judgment standard" applies.[4] The question of jurisdiction and the merits
2   of an action are considered intertwined where the same statute provides
3   the basis for both the subject matter jurisdiction of the federal court and
4   the plaintiff's substantive claim for relief.[5]

5

6   **III. Lindsay Is a Profoundly Disabled Person and an Active ADA**
7       **Litigator Who Personally Encountered Blatant Paths of**
8       **Travel and Parking Space Violations at the Village Market**
9       **and Who Has Declared That She Intends to Return to the**
10      **Village Market But Is Deterred From Returning Until the**
11      **Village Market is Fully Compliant. There Can Be No Doubt**
12      **that Lindsay Has Met the Broad and Liberal Test for**
13      **Standing in ADA Cases.**

14          Given the generous and broad standing requirement for ADA cases,
15   it is remarkable that the defendants are raising a standing challenge in this
16   case. Decades ago, the Supreme Court held that in civil rights cases—
17   especially where private enforcement suits are the primary method of
18   obtaining compliance—standing must be given a "generous construction"
19   and defined "as broadly as is permitted by Article III of the Constitution."[6]
20   The Ninth Circuit has expressly applied this holding to ADA cases: "The
21   Supreme Court has instructed us to take a broad view of constitutional
22   standing in civil rights cases, especially where, as under the ADA, private
23   enforcement suits are the primary method of obtaining compliance with
24   the Act."[7]

25   _____
26   [4] *Roberts*, 812 F.2d at 1177; *Careau Grp. v. United Farm Workers of Am., AFL-
        CIO*, 940 F.2d 1291, 1293 (9th Cir. 1991).
27   [5] *Sun Valley*, 711 F.2d at 1138.
28   [6] *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 & 212 (1972).
     [7] *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 -1040 (9th Cir. 2008).

Whenever ADA standing challenges have come before the courts, this has been a guiding principle. "Article III standing should likewise be construed as broadly as possible."[8] "[T]he ADA, the Unruh Act, and the DPA require the court to *construe standing liberally* . . . The ADA, the Unruh Act, and the DPA have granted private citizens a *broad right* to enforce their mandates."[9]

With respect to ADA-architectural-barrier cases, the Ninth Circuit has grappled with standing issues on numerous occasions and laid down a healthy body of published case law. The most significant of Ninth Circuit rulings on the topic is *Chapman v. Pier 1 Imports*,[10] which was decided by an en banc panel. *Chapman* holds that an ADA plaintiff: (1) "must demonstrate that he has suffered an injury-in-fact," and (to obtain injunctive relief), (2) demonstrate a "real and immediate threat of repeated injury" in the future.[11] Whitaker will discuss and apply each element to the facts of the present case.

### A.     Lindsay Suffered an Injury in Fact Because She Personally Encountered Inaccessible Paths of Travel and Parking Space at the Village Market in January 2019.

Under the ADA, the general rule is that persons with disabilities are entitled to "full and equal enjoyment" of facilities, privileges and accommodations offered by places of public accommodation.[12] A specific

---

[8] *Wilson v. Pier 1 Imports (US), Inc.*, 413 F. Supp. 2d 1130, 1133 (E.D. Cal. 2006).

[9] *Natl. Fedn. of the Blind of California v. Uber Techs., Inc.*, 103 F. Supp. 3d 1073, 1084 (N.D. Cal. 2015) (emphasis added).

[10] *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011).

[11] *Chapman*, supra, 631 F.3d at 946.

[12] 42 U.S.C. § 12182(a).

act of discrimination is the "failure to remove architectural barriers" that are readily achievable to remove.[13] The *Chapman* court held, therefore, a plaintiff's rights are violated under the ADA "when a disabled person encounters an accessibility barrier [that] interferes with the plaintiff's full and equal enjoyment of the facility."[14]

But what constitutes a barrier that interferes with full and equal enjoyment? *Chapman* answered this question definitively: "Because the ADAAG establishes the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, *it will impair* the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA. That discrimination satisfies the 'injury-in-fact' element . . . ."[15] This is an *objective* test:

A disabled person who encounters a "barrier," i.e., an architectural feature that fails to comply with an ADAAG standard relating to his disability, suffers unlawful discrimination as defined by the ADA. Indeed, by establishing a national standard for minimum levels of accessibility in all new facilities, the ADAAG removes the risk of vexatious litigation that a more subjective test would create. Those responsible for new construction are on notice that if they comply with the ADAAG's objectively measurable requirements, they will be free from suit by a person who has a particular disability related to that requirement.[16] In the present case, Lindsay went to the Market in January 2019.[17] She found that

---

[13] 42 U.S.C. § 12182(b)(2)(A)(iv).
[14] *Chapman*, supra, 631 F.3d at 947.
[15] *Chapman*, supra, 631 F.3d at 947 (emphasis added).
[16] *Chapman*, supra, 631 F.3d at 948, fn. 5 (internal cites and quotes omitted for readability).
[17] Complaint (Docket Entry 1), ¶ 10.

Opposition to Motion to Dismiss                    2:19-cv-01166-VAP-GJS

1    Defendant Jeff Muchamel did not provide accessible paths of travel and
2    parking space in conformance with the ADA Standards.

3         And there can be no question that this barrier "relates to" Lindsay's
4    disability. Lindsay is a wheelchair user and the requirement for accessible
5    paths of travel and parking space affect wheelchair users. Thus, there can
6    be no dispute that Lindsay suffered an injury in fact *during her visit of*
7    *January 2019*.  And Defendant Jeff Muchamel has not argued otherwise in
8    its motion.

9

10   **B.    Lindsay has standing to obtain injunctive relief**
11   **because she is deterred from returning to the Village**
12   **Market until the unlawful barriers are removed.**

13        The final question before the court in a standing inquiry is whether a
14   plaintiff can establish that there is ongoing injury or a real likelihood of
15   future injury.[18]  It is axiomatic that if there is no ongoing or likely future
16   injury, then a plaintiff has no standing for injunctive relief. *Chapman* firmly
17   established that there are two ways to demonstrate such standing:
18   "Demonstrating an intent to return to a noncompliant accommodation is
19   but one way for an injured plaintiff to establish Article III standing to
20   pursue injunctive relief. A disabled individual also suffers a cognizable
21   injury if he is deterred from visiting a noncompliant public
22   accommodation because he has encountered barriers related to his
23   disability there."[19]

24        In the present case, Lindsay has alleged such deterrence. Lindsay's
25   deterrence allegations match the *Chapman* court's holding, almost word
26   for word: "Plaintiff will return to the Market to avail herself of its goods or

27   _____

28   [18] *Chapman*, supra, 631 F.3d at 946-47.
     [19] *Chapman*, supra, 631 F.3d at 949.

9

1  services once the barriers are permanently removed. If the barriers are
2  not removed, the plaintiff will face unlawful and discriminatory barriers
3  again."[20]

4       This evidence is uncontroverted and more than sufficient to meet the
5  threshold for standing, especially given that courts have held that standing
6  should be construed generously, liberally and to the broadest extent
7  possible in these ADA cases. Stating an intention to return to a store after
8  the barriers have been fixed is sufficient to establish standing: "When
9  asked in his deposition whether he had any plans to return to the store,
10  *Doran* answered, 'Yes, once it's fixed.' This deposition testimony
11  demonstrates both *Doran's* continued deterrence from patronizing the
12  store and his intention to return in the future once the barriers to his full
13  and equal enjoyment of the goods and services offered there have been
14  removed."[21]

15       The *Doran* court summarized, "Allegations that a plaintiff has
16  visited a public accommodation on a prior occasion and is currently
17  deterred from visiting that accommodation by accessibility barriers
18  establish that a plaintiff's injury is actual or imminent."[22]

19       Similarly, in the very first case to establish deterrence-standing, the
20  Ninth Circuit held, "We hold that a disabled individual who is currently
21  deterred from patronizing a public accommodation due to a defendant's
22  failure to comply with the ADA has suffered 'actual injury.' Similarly, a
23  plaintiff who is threatened with harm in the future because of existing or
24  imminently threatened non-compliance with the ADA suffers 'imminent
25  injury.'"[23]

26  _____

27  [20] Complaint (Docket Entry 1), ¶ 20.
    [21] *Doran*, supra, 524 F.3d at 1041.
28  [22] *Doran*, supra, 524 F.3d at 1041.
    [23] *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002).

Opposition to Motion to Dismiss                2:19-cv-01166-VAP-GJS

And just recently, the Ninth Circuit weighed in again on the topic. In *Civ. Rights Educ.*,[24] several disabled plaintiffs sued a hotel chain for inaccessibility under the ADA.  They did not have any concrete or specific plans to return and the defendants argued that it was not enough to say that "they do not plan to stay at the hotels unless and until [defendant] remedies the violation."[25] But the Ninth Circuit rejected the defense argument: "The Named Plaintiffs need not intend to visit the hotels until after remediation" because "under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury [that] continues so long as equivalent access is denied."[26]

## C.   Lindsay does not need to allege intent to return to the Market as a customer in order to have Standing.

While Lindsay has alleged her intent to return as a customer, she did not need to. The Ninth Circuit recently tackled the issue head-on and ruled: "We also conclude that motivation is irrelevant to the question of standing under Title III of the ADA."[27] In *Civ. Rights*, the court held that "as a matter of first impression, a plaintiff suing under Title III of the ADA can claim tester standing."[28] In other words, it *does not matter why* Lindsay

---

[24] *Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093 (9th Cir. 2017)

[25] *Civ. Rights Educ.*, 867 F.3d at 1100.

[26] *Civ. Rights Educ.*, 867 F.3d at 1100-1101.

[27] *Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1102 (9th Cir. 2017).

[28] *Id.* at 1093.

---

11

1    went to the business or desires to return, she has a right to full and equal
2    access and to be free from discrimination.

3        "The Supreme Court has instructed us to take a broad view of
4    constitutional standing in civil rights cases, especially where, as under the
5    ADA, private enforcement suits are the primary method of obtaining
6    compliance with the Act."[29] Therefore, "[a]llegations that a plaintiff has
7    visited a public accommodation on a prior occasion and is currently
8    deterred from visiting that accommodation by accessibility barriers
9    establish that a plaintiff's injury is actual or imminent."[30] And the Ninth
10   Circuit has held that alleging "a desire to visit the accommodation if it
11   were made accessible" is sufficient.[31] As shown below, Linday's
12   statements regarding her intent to return to the Market are more than
13   sufficient.

14

15   **D.   Lindsay was not asked and did not deny that she had**
16   **an intent to return to the Market, and has stated in**
17   **signed Interrogatory responses that she does intend**
18   **to return.**

19       Defendant argues that Lindsay conceded that she had no intent to
20   return to the Market, but then, after a break, changed her mind and said
21   that she did. This is not the case. Rather than ask if Lindsay had an intent
22   to return to the Market, Lindsay was first asked if she had "any other
23   reason to be in the area of the market – church, socializing, a school

24   _____

25   [29] *Doran v. 7-Eleven, Inc.*,  524 F.3d 1034, 1039 -1040 (9th Cir. 2008), quoting,
26         *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972).

27   [30] *Doran*, *supra*, 524 F.3d at 1041

28   [31] *D'Lil v. Best Western Encina Lodge & Suites*,  538 F.3d 1031, 1037 (9th Cir.
          2008).

Opposition to Motion to Dismiss                    2:19-cv-01166-VAP-GJS

nearby? Is there any other – anything else that attracts you to that area?" to which Lindsay responded, "No."[32] Asking about any other reason to return to the area of the market is not the same thing as asking about Lindsay's intent to return to the market itself, an intent that she already expressed in her Complaint.[33]

Defendant, both at Plaintiff's deposition and in its motion to dismiss, jumped to the conclusion that Lindsay's short answer to a vague, compound and rambling question indicated an absence of intent that Lindsay has already plainly stated in her pleadings. As the transcript shows, Defendant's erroneous interpretation of her answer confused her even after a break. Defendant's suggestion that she was coached during the break is contradicted by the fact that Lindsay didn't think she said what defense counsel insisted she had.

> 7 Q You don't have plans to go to every single
> 8 business in Los Angeles County, do you?
> 9 A No. I have to have a reason.
> 10 Q You have to have a reason. And before the
> 11 break, you didn't have a reason for going back to the
> 12 market; right? You told me you didn't have a reason for
> 13 going back to the market before the break; right?
> 14 A Did I?
> 15 Q Yeah, you did.
> 16 A Oh, okay.
> 17 Q Okay. But after the break, you said you had a
> 18 reason for going back to the area.
> 19 A Oh, if I was in the area.

---

[32] Document 27-1, 8:14-20

[33] Complaint (Docket Entry 1), ¶ 27.

20 Q Oh, if you were in the area. Why would you be

21 in the area?

22 A Because I travel a lot.[34]

At no point during her deposition is Lindsay ever asked if she intends to return to the Market. Perhaps the reason Lindsay was never asked whether she intends to return to the Market is that she would, as she has already answered in her verified responses to Defendant's Set One Interrogatories.[35] Instead, Defendant tried to catch Lindsay with a poorly phrased "gotcha" question, and when that didn't work he erroneously represented to Lindsay that she had said something she had not, which she immediately corrected.

In both her Complaint and her signed Interrogatory responses, Lindsay has averred an intent to return to the Market once the barriers are removed, which is surpassingly sufficient for purposes of standing.

## IV. There Is No Basis for the Court to Decline to Retain Supplemental Jurisdiction Over the Unruh Claim

Should this Court dismiss Lindsay's ADA claim, it should maintain supplemental jurisdiction over the remaining state claims.  When the federal claims are dismissed from a case, the District Court has discretion whether to maintain its supplemental jurisdiction over the state claims or dismiss them.[36] The "justification" underlying the decision whether to maintain supplemental jurisdiction or dismiss a case "lies in considerations of judicial economy, convenience and **fairness to**

---

[34] Document 27-1, 11:7-22

[35] Declaration of Elliott Montgomery. Exhibit 1, 7:24. ("Plaintiff will return to the Market to avail herself of its goods or services once the barriers are permanently removed.")

[36] *Schneider v. TRW, Inc.*, 938 F.2d 986, 993 (9th Cir. 1991).

**litigants**..."[37] In fact, the Courts have recognized that judicial economy is the "essential policy behind the modern doctrine of pendent jurisdiction" and it supports "the retention of pendent jurisdiction in any case where substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort."[38]  In other words, there must be a consideration of the impact that dismissal will have on judicial economy with an eye towards the avoidance of multiplicity of litigation.

The *Kohler* case presents a lengthy analysis of the issue and concluded that fairness favored keeping the Unruh claim in federal court "rather than in a separate, and largely redundant, state-court suit."[39] Another court held that supplemental jurisdiction should be exercised where "declining jurisdiction would simply require twice the expenditure of resources as to the evidentiary determinations."[40] Another framing of the analysis states that supplemental jurisdiction should be exercised to avoid "two parallel proceedings, one in federal court and one in the state system."[41] Here, the federal claim has not been lost and the principles of judicial economy and fairness militates toward keeping Unruh.

Thus, this Court acts properly in keeping the modest remaining state claim and it certainly does not infringe upon any principle of *comity*, especially given that the state claim is entirely predicated upon a federal violation. In fact, the concept of comity weighs heavily *in favor of* keeping the present case in federal court under these circumstances: "There may,

---

[37] *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) (emphasis added).

[38] *Id.*, citing *Rosado v. Wyman*, 397 U.S. 397, 405 (1970).

[39] *Kohler v. Rednap, Inc.*, 794 F. Supp. 2d 1091, 1096 (C.D. Cal. 2011).

[40] *Daenzer v. Wayland Ford, Inc.*, 193 F. Supp. 2d 1030, 1043 (W.D. Mich. 2002).

[41] *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 787 (3d Cir. 1995).

Opposition to Motion to Dismiss                    2:19-cv-01166-VAP-GJS

on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong."[42]  In fact, most district courts that weigh the factors discussed above will retain supplemental jurisdiction over the state claims under these circumstances.[43] Thus, the court acts properly in keeping the Unruh claim.

## V.   Conclusion

Based on the foregoing, Plaintiff respectfully requests this Court deny Defendant's motion to dismiss.

Dated: October 28, 2019          CENTER FOR DISABILITY ACCESS


By: ___/s/ Elliott Montgomery___
                    ELLIOTT MONTGOMERY
                    Attorneys for Plaintiff

---

[42] *Gibb*s, supra, 383 U.S. at 727.

[43] *See, e.g., Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1131 (C.D. Cal. 2005); *LaFleur v. S&A Family LLC*, 2014 WL 2212018, *5 (C.D. Cal. 2014); *Munson v. Del Taco, Inc.,* 2006 WL 4704611, *6 (C.D. Cal. 2006*); Martinez v. Longs Drug Stores, Inc*., 2005 WL 2072013, *6 (E.D. Cal. 2005); *Langer v. McHale,* 2014 WL 5422973, *1 (S.D. Cal. 2014).