

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

FILED
CLERK, U.S. DISTRICT COURT

NOV 21, 2019

CENTRAL DISTRICT OF CALIFORNIA
BY:     BH          DEPUTY

Shirley Lindsay,

          Plaintiff,

          v.

Carolyn K. Mulne and Jeff

    Muchamel,

          Defendants

2:19-cv-01166-VAP-GJSx

**Order DENYING Defendant's Motion to Dismiss for Lack of Article III Standing and DECLINING to Exercise Supplemental Jurisdiction Over State Law Claims (Doc. No. 26)**

Before the Court is Defendant Jeff Muchamel's Motion to Dismiss for Lack of Article III Standing and Request to Decline Supplemental Jurisdiction Over State Claims, filed October 18, 2019. (Doc. No. 26, "Motion"). Plaintiff Shirley Lindsay opposed the Motion on October 28, 2019, (Doc. No. 29), and Defendant replied on October 31, 2019, (Doc. No. 30).

After considering all papers filed in support of, and in opposition to, the Court DENIES the Motion. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## I. BACKGROUND

Plaintiff Shirley Lindsay ("Plaintiff") commenced this action against Carolyn K. Mulne ("Mulne") and Jeff Muchamel ("Muchamel" or "Defendant")

on February 15, 2019, alleging that various features of the Village Market ("Market") violate the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA") and the Unruh Civil Rights Act, Cal. Civ. Code §§ 51-53 ("Unruh Act").  (See Doc. No. 1, "Complaint").  Defendant owns the Market, located at 11653 Moorpark Street in North Hollywood, California, and Mulne owns the real property upon which the Market is located.

Plaintiff, who has spinal muscular atrophy, visited the Market in January 2019 "with the intention to avail herself of its goods and services, motivated in part to determine if the defendants comply with the disability access laws." (Complaint at ¶ 10).  During that visit, Plaintiff alleges she found multiple construction violations on the property, including an inaccessible pathway from the sidewalk to the entrance of the market, parking stall, merchandise aisles in the Market.  (Complaint at ¶¶ 10-31).  Plaintiff brings this action for damages and injunctive relief, seeking "to have all barriers related to her disability remedied." (Complaint at ¶ 31).

In his Motion, Defendant Muchamel argues that Plaintiff lacks Article III standing to bring her federal claims.  Defendant therefore asks this Court to dismiss Plaintiff's federal claims, and to decline to exercise supplemental jurisdiction over the remaining state law claims.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction based on standing issues.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115,

United States District Court
Central District of California

1122 (9th Cir. 2010).  In the context of a 12(b)(1) motion, the plaintiff has the

burden of establishing Article III standing.  *Id.*

Although courts usually accept the plaintiff's allegations as true on a

motion to dismiss, "[w]hen the defendant raises a factual attack" on plaintiff's

jurisdictional allegations under Rule 12(b)(1), "the plaintiff must support her

jurisdictional allegations with 'competent proof,' under the same evidentiary

standard that governs in the summary judgment context."  *Leite v. Crane*

*Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Hertz Corp. v. Friend*, 559

U.S. 77, 96-97 (2010)).  In such a case, the district court "need not presume

the truthfulness of the plaintiff's allegations," and "may review evidence

beyond the complaint without converting the motion to dismiss into a motion

for summary judgment."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035,

1039 (9th Cir. 2004).  The plaintiff must prove by a preponderance of the

evidence that each of the requirements for subject-matter jurisdiction has

been met.  *Leite*, 749 F.3d at 1121.

To satisfy "the irreducible constitutional minimum of standing," the

plaintiff must demonstrate: (1) an "injury in fact" that is "concrete and

particularized" and "actual or imminent, not conjectural or hypothetical"; (2)

a "causal connection between the injury" and the challenged action of the

defendants; and (3) that it is "likely, as opposed to merely speculative, that

the injury will be redressed by a favorable decision."  *Multistar Industries,*

*Inc. v. U.S. Dept. of Transp.*, 707 F.3d 1045, 1054 (9th Cir. 2013) (quoting

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  A suit brought

by a plaintiff without Article III standing is not a "case or controversy," and an

United States District Court
Central District of California

1   Article III federal court therefore lacks subject matter jurisdiction over the

2   suit. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  In that

3   event, the suit should be dismissed under Rule 12(b)(1).  *Id.*

4

5      Plaintiff argues that this Court should not even address the standing

6   inquiry, because "[t]he Ninth Circuit has cautioned that courts should not

7   apply Federal Rule of Civil Procedure 12(b)(1) or 12(h)(3) when, as it is

8   here, the issue of jurisdiction is intertwined with the merits of a claim." (Doc.

9   No. 29 at 5).  This argument is belied by the significant body of case law,

10   including several of the cases Plaintiff cites, analyzing ADA standing as a

11   threshold inquiry.  *See, e.g.*, *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d

12   939, 946 (9th Cir. 2011) ("It goes without saying that those who seek to

13   invoke the jurisdiction of the federal courts must satisfy the threshold

14   requirements imposed by Article III of the Constitution by alleging an actual

15   case or controversy." (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95,

16   101 (1983)).  An examination of standing in this case therefore is proper.

17

18              **III.   DISCUSSION**

19      Congress enacted the ADA "to provide clear, strong, consistent,

20   enforceable standards addressing discrimination against individuals with

21   disabilities."  42 U.S.C. § 12101(b)(2).  Unlawful "discrimination," for the

22   purposes of the ADA, occurs when features of an accommodation "subject

23   an individual or class of individuals on the basis of a disability or disabilities

24   of such individual or class, directly, or through contractual, licensing, or other

25   arrangements, to a denial of the opportunity of the individual or class to

26   participate in or benefit from the goods, services, facilities, privileges,

advantages, or accommodations of an entity." 42 U.S.C. §
12182(b)(1)(A)(i).

The Ninth Circuit "take[s] a broad view of constitutional standing in civil
rights cases, especially where, as under the ADA, private enforcement suits
are the primary method of obtaining compliance with the Act." *Doran v. 7-
Eleven, Inc.*, 524 F.3d 1034, 1039-1040 (9th Cir. 2008). Nevertheless, "the
ADA's reach is not unlimited" and, "as with other civil rights statutes, to
invoke the jurisdiction of the federal courts, a disabled individual claiming
discrimination must satisfy the case or controversy requirement of Article III
by demonstrating his standing to sue at each stage of the litigation."
*Chapman*, 631 F.3d at 946.

"An ADA plaintiff can establish standing to sue for injunctive relief either
by demonstrating deterrence," or "by demonstrating injury-in-fact coupled
with an intent to return to a noncompliant facility." *Chapman*, 631 F.3d at
944. Thus, "[d]emonstrating an intent to return to a noncompliant
accommodation is but one way for an injured plaintiff to establish Article III
standing to pursue injunctive relief." *Id.* "A disabled individual . . . suffers a
cognizable injury if he is deterred from visiting a noncompliant public
accommodation because he has encountered barriers related to his
disability there." *Id.* at 949. The Ninth Circuit takes an expansive view of
deterrence standing, holding that "[o]nce a disabled individual has
encountered or become aware of alleged ADA violations that deter his
patronage of or otherwise interfere with his access to a place of public
accommodation, he has already suffered an injury in fact traceable to the

defendant's conduct and capable of being redressed by the courts, and so
he possesses standing under Article III to bring his claim for injunctive relief
forward." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1042 (9th Cir. 2008).

Plaintiff has alleged deterrence as the basis for her standing to sue here.
(Doc. No. 29 at 9).  Thus, to determine whether Plaintiff has standing, the
Court must determine whether Plaintiff presently is deterred from visiting the
Market.  *See Civil Rights Educ. and Enforcement Ctr. v. Hosp. Props. Tr.*,
867 F.3d 1093 (9th Cir. 2017, 867 F.3d at 1099 ("The relevant question [for
standing purposes], therefore, is whether the Named Plaintiffs are presently
deterred from visiting [defendant businesses].").  In her Complaint, Plaintiff
alleged that she has visited the Market and found it to be noncompliant.
She has further alleged that she "will return to the Market to avail herself of
its goods or services once the barriers are permanently removed," but that
"[i]f the barriers are not removed, the plaintiff will face unlawful and
discriminatory barriers again."  (Complaint at ¶ 27).

Although these allegations appear to satisfy the broad rule the Ninth
Circuit articulated in *Doran*, Defendant nevertheless argues that because
Plaintiff was unable to give "any reason for returning to the market" at her
deposition, she therefore lacks standing to bring an ADA claim.  (Motion at
1).  During Plaintiff's deposition on September 20, 2019 ("Deposition," Doc.
No. 27-1), Defendant asked her if "there [was] . . . anything else that
attracts" Plaintiff to the area of the Market.  Plaintiff answered that there was
not.  (Motion at 4, quoting Deposition ¶ 8:14-20).  Defendant contrasts
Plaintiff's answers with cases in which plaintiffs established standing to

6

1 pursue their ADA claims by describing personal motivations for returning to

2 a particular business.[1]

3

4      The Ninth Circuit, however, has recently held that "motivation is

5 *irrelevant* to the question of standing under Title III of the ADA."  *See Civil*

6 *Rights Educ. & Enforcement Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093 (9th Cir.

7 2017) ("CREEC") (emphasis added).  The Ninth Circuit held in *CREEC*, as a

8 matter of first impression, that the ADA permits a "tester" to bring a case

9 with the express purpose of enforcing the ADA.  *Id*. at 1101.  In *CREEC*, a

10 civil rights organization and three individual plaintiffs with disabilities sued

11 Hospitality Properties Trust ("HPT"), a real estate investment trust, "alleging

12 that HPT had failed to offer equivalent accessible transportation services at

13 its hotels in violation of Title III of the Americans with Disabilities Act."  *Id*. at

14 1097.  In their complaint, plaintiffs "alleged . . . that they intend[ed] to visit

15

16 [1] Defendant cites several cases in which plaintiffs provided specific,
personal reasons for returning to the sites of businesses that had failed to

17 accommodate disability to establish their standing.  *See, e.g.*, *Doran v. 7-Eleven, Inc*., 524 F.3d 1034, 1041 (9th Cir. 2008) (finding plaintiff was

18 deterred from visiting 7-Eleven where the store in question was 550 miles
from his home, but plaintiff had alleged that he had visited ten to twenty

19 times before); *Pickern v. Holiday Quality Foods Inc*., 293 F.3d 1133, 1135

20 (9th Cir. 2002) (concluding that plaintiff was deterred from patronizing
Defendant Holiday Foods grocery store located 70 miles from his residence

21 where plaintiff stated in his deposition that the store was close to his
grandmother's house, and that he visited her weekly).  These cases,

22 however, were decided before *Civil Rights Educ. & Enforcement Ctr. v.*

23 *Hosp. Props. Tr.*, 867 F.3d 1093 (9th Cir. 2017) ("CREEC").  *See, e.g.*,

24 *Johnson v. Alhambra & O Assocs.*, 2019 WL 2577306, at *3 (explicitly
rejecting Defendants' reliance on a pre-*CREEC* case, *Johnson v. Overlook*

25 *at Blue Ravine, LLC*, No. 2:10-CV-02387 JAM, 2012 WL 2993890, at *1

26 (E.D. Cal. July 20, 2012) that required a detailed factual showing to
establish tester standing under the ADA).

7

the relevant hotels, but [were] deterred from doing so by the hotels'

noncompliance with the ADA.  They further allege[d] that they [would] visit

the hotels when the non-compliance is cured." *Id*. at 1099.  Defendants

argued that, because plaintiffs were "motivated to visit the hotels only by

their desire to test them for ADA compliance," they lacked standing.


The Ninth Circuit rejected this argument.  Drawing on case law

regarding tester standing under the Fair Housing Act ("FHA"), which permits

plaintiffs who "pose as renters or purchasers for the purpose of collecting

evidence of unlawful steering practices" to sue for violations of the FHA, the

Ninth Circuit found that tester standing is also permissible under the ADA.

*See CREEC*, 867 F.3d at 1101 (quoting *Havens Realty Corp. v. Coleman*,

455 U.S. 363, 373–75 (1982)).  In the FHA context, "'testers' [were]

individuals who, without an intent to rent or purchase a home or apartment,

pose as renters or purchasers for the purpose of collecting evidence of

unlawful steering practices." *Havens*, 455 U.S. at 373.  Similarly, in the ADA

context, a tester who enters a business and, without an independent desire

to patronize that business, poses as a patron, and collects evidence about

noncompliance with the ADA has standing to bring an ADA action.  Indeed,

"Title III [of the ADA] provides remedies for 'any person' subjected to illegal

disability discrimination," and therefore, "anyone who has suffered any

invasion of the legal interest protected by Title III may have standing,

regardless of his or her motivation in encountering that invasion." *CREEC*,

867 F.3d at 1101 (quoting *Colorado Cross Disability Coal v. Abercrombie &*

*Fitch Co*., 765 F.3d 1205, 1210-11 (10th Cir. 2014)).

1    In the instant case, Plaintiff holds herself out as a tester, stating that she

2    visited the Market "motivated in part to determine if the defendants comply

3    with the disability access laws" and found it to be ADA noncompliant.

4    (Complaint at ¶ 10).  Defendant repeatedly emphasizes that Plaintiff has

5    only visited the Market once, and that she has not provided a personal

6    reason for returning to the Market when pressed in her deposition.

7    Nevertheless, Plaintiff did not disavow or contradict her allegations in the

8    complaint that she was deterred from returning to the market by its

9    noncompliance and that she intended to return "once the barriers are

10   permanently removed."  (Complaint at ¶ 27).  Indeed, Defendants did not, in

11   the excerpts provided, even ask if she intended to return to the Market.

12   Although Plaintiff did not provide any further factual details or personal

13   reasons supporting her allegation that she intended to return to the Market

14   once the ADA violations were resolved, she does not need to elaborate on

15   her reasons for returning for standing purposes, as "motivation is *irrelevant*

16   to the question of standing under Title III of the ADA."  *CREEC*, 867 F.3d at

17   1102 (emphasis added).

18

19   In sum, although an ADA plaintiff's intent to return must be "genuine," it

20   need not be "unrelated to litigation purposes," *Johnson v. Alhambra & O*

21   *Assocs.*, No. 2:19-CV-00103-JAM-DB, 2019 WL 2577306, at *3 (E.D. Cal.

22   June 24, 2019), nor does that intent need to be proven with "concrete

23   plans."  *Zimmerman v. GJS Grp., Inc.*, No. 217CV00304-GMN-GWF, 2018

24   WL 1512603, at *3 (D. Nev. Mar. 27, 2018).  Plaintiff's lack of specific,

25   personal reasons to return to the Market do not establish lack of genuine

26   intent to return.  Plaintiff has alleged that she visited the Market,

experienced its inaccessibility, and was deterred from returning.  She has
explicitly stated that she would return to the Market were it not for the ADA
violations.  These are precisely the allegations the Ninth Circuit found
sufficient to establish that plaintiffs had tester standing in *CREEC*, and they
are sufficient to establish tester standing here.  Defendant's questions in the
deposition, seemingly crafted to establish that Plaintiff has no non-litigation
reasons to visit the Market, do not defeat Plaintiff's standing.  Plaintiff has
sufficiently alleged injury and deterrence, and the court therefore DENIES
Defendant's motion to dismiss Plaintiff's ADA claims for lack of jurisdiction.

## IV.   CONCLUSION

The Court finds Plaintiff has Article III standing and, accordingly, the
Court has jurisdiction to hear Plaintiff's ADA claim.  The Court declines to
exercise supplemental jurisdiction over Plaintiff's state law claims. For the
foregoing reasons, the Court therefore DENIES the Motion to Dismiss.

**IT IS SO ORDERED.**

Dated:   11/21/19

Virginia A. Phillips
Chief United States District Judge

United States District Court
Central District of California