UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shirley Lindsay,<br><br>             Plaintiff,<br><br>       v.<br><br>Jeff Muchamel<br><br>             Defendant | 2:19-cv-01166-VAP-GJSx<br><br>**Order GRANTING IN PART and DENYING IN PART Defendant's Motion for Summary Judgment (Dkt. 33)** |

Before the Court is Defendant Jeff Muchamel's ("Defendant") Motion for Summary Judgment. (Doc. No. 33, "Motion"). Plaintiff Shirley Lindsay ("Plaintiff") filed her Opposition on December 16, 2019. (Doc. No. 38).

After consideration of the papers filed in support of and in opposition to the Motion, the Court deems this matter appropriate for resolution without a hearing pursuant to Local Rule 7-15. The Motion is GRANTED IN PART, and DENIED IN PART.

**I. BACKGROUND**

On February 15, 2019, Plaintiff filed her Complaint containing two claims: (1) violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"); and (2) violation of the Unruh Civil Rights Act, Cal. Civ. Code §§ 51-53 ("Unruh Act"). (Doc. No. 1, "Complaint"). On December

1

6, 2019, the Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims. (Doc. No. 32).

Plaintiff has spinal muscular atrophy and uses a wheelchair and a walker to get around. (Complaint at ¶ 1). Defendant owns the business Village Market ("Market"), located at 11653 Moorpark Street in North Hollywood, California. (Complaint at ¶¶ 4-5). Plaintiff claims she visited the Market in January 2019 to "avail herself of its goods and services, motivated in part to determine if the defendants comply with the disability access laws." (Complaint at ¶ 10). During her visit, Plaintiff alleges she encountered various accessibility barriers on the property. (Complaint at ¶¶ 10-31).

In his Motion, Defendant argues that Plaintiff's ADA claim is moot because Defendant remediated all alleged accessibility barriers. (Motion at 6). Defendant therefore asks this Court to grant summary judgment as to Plaintiff's ADA claim.

## II. LEGAL STANDARD

A motion for summary judgment or partial summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.

1998).  "The moving party may produce evidence negating an essential element of the nonmoving party's case, or . . . show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (reconciling *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  The nonmoving party must then "do more than simply show that there is some metaphysical doubt as to the material facts" but must show specific facts which raise a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

At the summary judgment stage, a district court should "focus on the admissibility of the [evidence's] contents" and not the form in which the evidence is presented—it is sufficient that a party will be able to produce evidence in its admissible form at trial.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001).  Moreover, "objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and thus need not be considered on a motion for summary judgment.  *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006).

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). "[T]he judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III. PRELIMINARY MATTERS

#### A. Defendant's Request for Judicial Notice

Defendant asks the Court to take judicial notice of excerpts of the Department of Justice's 2010 ADA Standards for Accessible Design, the 2016 California Building Code Chapter 11B, the United States Access Board Guide to the ADA Standards, the docket of actions in this case, and Plaintiff's Complaint. (Doc. No. 35). Plaintiff does not oppose. It is appropriate to take judicial notice of facts not in "reasonable dispute" that are "generally known within the trial court's territorial jurisdiction" and which "can be accurately and readily determined from sources whose accuracy cannot be questioned." Fed. R. Evid. 201. The Court therefore GRANTS judicial notice of these documents.

#### B. The California Building Code and the ADA

In Plaintiff's Opposition and Plaintiff's Response to Defendant's Statement of Uncontroverted Facts and Conclusions of Law, Plaintiff relies on the California Building Code ("CBC") to assert violations of the ADA. There is, however, "no basis for treating a violation of the [CBC] as a per se violation of the ADA." *Johnson v. Cala Stevens Creek/Monroe, LLC*, 401 F. Supp. 3d 904, 913 (N.D. Cal. 2019); *see also Johnson v. Lababedy,* No.

4

2:16-cv-0126 KJM AC, 2016 WL 4087061, at *5 (E.D. Cal. Aug. 2, 2016) ("[T]he CBC requirements are not mandatory, and failure to comply with them does not amount to a violation of the ADA."). Accordingly, compliance with the Americans with Disabilities Act Accessibility Guidelines ("ADA Guidelines" or "ADAAG"), and not the CBC, constitutes compliance with the ADA requirements.

## IV.   UNCONTROVERTED FACTS[1]

The Court finds the following material facts are supported adequately by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for the purposes of this Motion. See C.D. Cal. L.R. 56-3.

From March through April of 2019, Defendant "worked to remove the alleged barriers described in Plaintiff's complaint targeting interior and exterior portions of the property." (Doc. No. 38-1 at ¶ 2). Defendant hired a contractor to "make alterations to the parking lot, including the accessible parking stall and access aisle." (Doc. No. 38-1 at ¶ 22).

The Complaint alleges that the path of travel from the sidewalk on Moorpark to the entrance of the Market is "excessively sloped" (Doc. No. 38-1 at ¶ 12) and that the ramp from the sidewalk to the entrance "has a slope of 9.4% but lacks handrails." (Doc. No. 38-1 at ¶ 13). The Complaint

---

[1] These facts are taken from Plaintiff's Response to Defendant's Statement of Uncontroverted Facts and Conclusions of Law in Support of Motion for Summary Judgment. (Doc. No. 38-1).

also alleges that the disabled parking stall and access aisle are not level with each other (Doc. No. 38-1 at ¶ 18), have slopes in excess of 2.1% (Doc. No. 38-1 at ¶ 18), and are missing signage.  (Doc. No. 38-1 at ¶ 20).  Further, the Complaint claims that the walkway in front of the Market is "excessively sloped" (Doc. No. 38-1 at ¶ 27) and that the aisles inside the Market are too narrow.  (Doc. No. 38-1 at ¶ 31).

A California state Certified Access Specialist, Jason James ("James"), conducted two inspections of the Market premises on behalf of the Defendant.  (Doc. No. 38-1 at ¶ 6).  James conducted his first inspection on March 2, 2019, and subsequently inspected the property again on May 17, 2019.  (Doc. No. 38-1 at ¶¶ 8-9).  Plaintiff also hired an expert to conduct an inspection of the Market on September 17, 2019.  (Doc. No. 38-1 at ¶ 34).

## V.  DISCUSSION

Defendant moves for summary judgment on the basis that the violations alleged in the Complaint have been cured, mooting Plaintiff's claim for injunctive relief.  The Court accordingly examines whether Plaintiff's ADA claim is moot.

### A.  Mootness

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  A case may become moot if "(1) it can be said with assurance that 'there is no reasonable expectation . . .' that the alleged

violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citations omitted).  Once a case becomes moot, courts are "required to dismiss it." *Dufresne v. Veneman*, 114 F.3d 952, 954 (9th Cir. 1997).

Under the ADA, a private plaintiff can only sue for injunctive relief and attorney's fees.  *See* 42 U.S.C. § 12188(a)(1); 28 C.F.R. §§ 36.501, 36.505.  Accordingly, "a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011).  The Court assesses each asserted ADA violation for mootness below, without considering barriers that were not identified in the Complaint.  *Id.* at 909 (holding that on summary judgment a plaintiff cannot use an expert report to assert barriers that were not identified in the complaint).

**1.   Accessible Path of Travel to the Entrance of the Market**

Plaintiff alleges that the path of travel from the sidewalk on Moorpark to the entrance of the Market has an excessive slope.  (Doc. No. 38-1 at ¶ 12).  Plaintiff also alleges that the ramp from the sidewalk to the front entrance of the Market has a slope of 9.4% and lacks handrails.  (Doc. No. 38-1 at ¶ 13).  Section 4.3.2 of the ADA Guidelines only requires one accessible path of travel to connect public rights of way to the accessible entrance of the property.  ADAAG § 4.3.2.

Defendant argues no violation remains because "the entire surface, from the public sidewalk to the entrance of the market, was replaced." (Doc. No. 38-1 at ¶ 15). Defendant presents evidence that the dimensions of the walking surface from the sidewalk to the entrance of the Market comply with federal requirements for wheelchair accessibility. (Doc. No. 38-1 at ¶ 15). Plaintiff does not argue that the slope from the sidewalk on Moorpark to the entrance of the Market remains excessively sloped. Rather, Plaintiff submits evidence that the path of travel "is missing the required detectable warnings when crossing a vehicular route." *See* Kent Report at 1. Plaintiff has not established, however, that this amounts to a violation of the ADA. The expert report submitted by Plaintiff refers only to the CBC for this alleged deficiency, and not to the ADAAG. *See* Kent Report at 1.

For the reasons discussed in section III(B) of this order, the Court need not address the CBC violation. As a result, the ADA claim regarding the path of travel from the sidewalk on Moorpark to the entrance of the Market is DISMISSED AS MOOT.

### 2. Accessibility of ADA-Compliant Parking

Plaintiff alleges that the accessible parking space and access aisle are not level with each other and have slopes in excess of 2.1%. (Doc. No. 38-1 at ¶ 18). The Plaintiff also alleges that there is a ramp in the access aisle with flared sides. (Doc. No. 38-1 at ¶ 19). The ADA Guidelines state: "Parking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions." ADAAG § 4.6.3. Plaintiff concedes that Defendant has remedied these barriers. (Doc. No. 38-1 at ¶¶ 24-25).

"The accessible parking stall and access aisle are level with one another and have slopes and cross slopes that do not exceed 2.1%." (Doc. No. 38-1 at ¶ 24). In addition, "[t]he ramp in the access aisle has been eliminated and the access aisle at slopes and cross-slopes do not exceed 2.1%." (Doc. No. 38-1 at ¶ 25). The Court therefore DISMISSES AS MOOT this ADA claim.

### 3. Lack of Parking Signs

Plaintiff alleges that the accessible parking space and access aisle are missing signage. (Doc. No. 38-1 at ¶ 20). Specifically, Plaintiff claims that the parking stall "does not have the required signage bearing the ISA logo, there is no 'Minimum Fine $250' [sign] and there is no tow-away signage." (Complaint at ¶ 20). The ADA Guidelines state: "Accessible parking spaces shall be designated as reserved by a sign showing the symbol of accessibility." ADAAG § 4.6.4.

Defendant argues no violation remains, because "[a]ll signage as identified in the complaint has been properly placed, including [the] ISA logo, 'Minimum Fine $250' sign, and tow-away signage." (Doc. No. 38-1 at ¶ 26). Plaintiff does not dispute that the appropriate signs have been provided, but points to three other problems with the parking signs: (1) signage is not located at each vehicular entry; (2) the tow-away sign is missing the towing address and towing number as a permanent part of the sign; and (3) the bottom of the accessible parking sign is less than 80 inches above the ground. (Doc. No. 38-1 at ¶ 26). Although these deficiencies may exist, Plaintiff has not established that they amount to a

violation of the ADA. Rather, the expert report submitted by Plaintiff refers only to the CBC for these alleged deficiencies, and not to the ADAAG. *See* Kent Report at 1.

For the reasons discussed in section III(B) of this order, the Court need not address the CBC violations. As a result, the ADA claim regarding missing parking signage is DISMISSED AS MOOT.

### 4. Availability of ADA-Compliant Walkway

Plaintiff alleges that there is an excessively sloped walkway in front of the Market. (Doc. No. 38-1 at ¶ 27). Plaintiff claims that "the walkway in front of the Market has cross slopes . . . that are above 2.1%." (Complaint at ¶ 23). Under the 2010 ADA Standards, cross-slopes on an accessible route cannot exceed 1:48, or 2.08%. ADAS § 403.3.

Defendant presents evidence, including an expert declaration and inspection report, that "the portion of the walkway connecting the accessible access aisle to the accessible entrance of the Market and connecting the accessible path of travel to the accessible entrance of the Market complied with state and federal requirements for wheelchair accessibility." (Doc. No. 38-1 at ¶ 28). Plaintiff argues that Defendant has not cured this deficiency, and Plaintiff provides her own expert declaration and inspection report to demonstrate that the walkway in front of the Market remains excessively sloped. (Doc. No. 38-1 at ¶ 28).

At summary judgment, a court cannot weigh evidence. See *Anderson*, 477 U.S. at 255. Further, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Here, Plaintiff has provided evidence that, if believed, undermines Defendant's assertion that the walkway is no longer excessively sloped. The Court therefore DENIES Defendant's Motion as to the claim regarding the slope of the walkway in front of the Market.[2]

### 5. Accessible Path of Travel Inside the Market

Plaintiff alleges that the Market's merchandise aisles are too narrow. (Doc. No. 38-1 at ¶ 31). More specifically, Plaintiff claims the aisles are "less than 36 inches in width" and "narrow[] to as little as 32 inches in width." (Doc. No. 38-1 at ¶ 31). The ADA Guidelines require stores to provide an accessible route of travel though their facilities at least 36 inches wide. ADAAG § 4.3.3. While the ADA requires walking surfaces to have a clear width of 36 inches minimum, it also permits narrowing of the aisles to 32 inches. ADAS § 403.5.1.

Defendant presents an expert declaration and inspection report to show that, as of May 17, 2019, "the aisles were a minimum of 36 inches wide except at a few points that were not less than 32 inches wide running for less than 24 inches." (Doc. No. 38-1 at ¶ 34). Defendant also provides photographs of the Market's aisles that were taken during Plaintiff's expert

---

[2] The Plaintiff also asserts other alleged ADA violations regarding the Market entry and the walkways around the Market. See Kent Report at 1. To the extent that these are new violations, they will not be considered by the Court as a plaintiff cannot use an expert report to assert barriers that were not identified in the complaint. See *Oliver*, 654 F.3d at 909.

11

inspection of the Market. (Doc. No. 38-1 at ¶ 34, Ex. 7). Further, Defendant claims that the aisles are "constantly monitor[ed]" "to ensure that there are no aisles blocked when restocking occurs." (Doc. No. 38-1 at ¶ 34). Defendant asserts that this evidence shows that the conditions have been remedied and that Plaintiff's claims are moot. Plaintiff argues that Defendant has not cured this deficiency and submits an expert declaration and inspection report, as well as photographs, to demonstrate that the pathway was obstructed when Plaintiff's expert went to visit the Market on September 17, 2019. (Doc. No. 38-1 at ¶¶ 32-34).

The Court is again faced with conflicting evidence. The Court cannot resolve the conflicting evidence through a summary judgment motion. Thus, the Court DENIES Defendant's Motion for Summary Judgment on this issue.

The Court accordingly DENIES summary judgment as to the walkway in front of the Market and the merchandise aisles in the Market, and GRANTS summary judgment as to the path of travel from the sidewalk on Moorpark to the entrance of the Market, the accessible parking space and access aisle, and the parking signage.

/ / /
/ / /
/ / /
/ / /

## VI. CONCLUSION

Defendant's Motion is therefore GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED.**

Dated: 4/10/20

Virginia A. Phillips
Chief United States District Judge